Margaret D. Stock, Esq.
Alaska State Bar No. 9306036
Neil T. O'Donnell, Esq.
Alaska State Bar No. 8306049
Kristine A. Quint, Esq.
Alaska State Bar No. 2411132
Cascadia Cross Border Law Group LLC
4300 B St., Suite 207
Anchorage, AK 99503
Email: mstock@cascadialawalaska.com
Email: nodonnell@cascadialawalaska.com
Email: kquint@cascadialawalaska.com
Telephone: (907) 242-5800
Facsimile: (907) 290-8827

Attorneys for the Petitioner



RECEIVED
FEB 07 2025
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBLE AHMED SALAD, <br><br> Petitioner, <br><br> v. <br><br> STATE OF ALASKA, Department of Corrections; ARLANDO HERNANDEZ, Superintendent of the Anchorage Correctional Complex, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; THOMAS HOMAN, White House Border Czar, in his official capacity; and CALEB VITELLO, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity. <br><br> Respondents. | Case No. 3:25-CV-00029-SLG <br><br> **PETITION FOR HABEAS CORPUS RELIEF** |

# PETITION FOR HABEAS CORPUS RELIEF

Petitioner, by and through counsel, alleges and complains of Respondents as follows:

## I. INTRODUCTION

1. Petitioner Roble Ahmed Salad (hereinafter, "Salad" or "Petitioner") is a citizen of Somalia and is also a resident of Anchorage, Alaska. Salad is presently being detained at the Anchorage Correctional Center Complex, 1400 East 4th Avenue, Anchorage, Alaska. He has been detained there since February 4, 2025 under a contract between the United States Department of Homeland Security (DHS) and the State of Alaska whereby the State of Alaska houses federal civil immigration detainees such as Petitioner. Petitioner is under the direct control of Respondents and their agents. His detention is unlawful because he has been detained pursuant to the unlawful orders of Respondents Caleb Vitello and Thomas Homan, which violate the Constitution, laws, and regulations of the United States. Accordingly, to vindicate Petitioner's Constitutional and statutory rights, this Court should grant the instant petition for a writ of habeas corpus and order Petitioner's release from detention.

## II. JURISDICTION AND VENUE

2. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States.

3. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. § 1651.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(3) because this is an action against officers of the United States acting in their official capacities, brought in the District where the Petitioner resides.

5. Petitioner resides in Anchorage, Alaska within the District of Alaska, and is subject to the jurisdiction of this Court.

6. All Respondents live, work, operate, or function within the District of Alaska.

### III. REQUIREMENTS OF 28 U.S.C. § 2243

7. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

8. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

Salad v. USCIS *et. al.*
Petition for Habeas Corpus - Page 3 of 14

Case 3:25-cv-00029-TMB-KFR   Document 1   Filed 02/07/25   Page 3 of 14

## IV. PARTIES

9. Petitioner Roble Ahmed Salad (hereinafter, "Salad" or "Petitioner") is a citizen of Somalia who fled to the United States in fear of his life and applied for asylum pro se. He resides in Anchorage, Alaska. Until his recent arrest, he has been employed with appropriate work authorization at an Anchorage assisted living facility. Petitioner has not engaged in, or been charged with, any criminal activity in the United States. Petitioner is currently detained at the Anchorage Correctional Complex, 1400 East 4th Avenue, Anchorage, Alaska. He is in the custody and under the direct control of Respondents and their agents.

10. Respondent STATE OF ALASKA, Department of Corrections is the entity and division presently maintaining physical control of Petitioner pursuant to a contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner.

11. ARLANDO HERNANDEZ is the Superintendent of the Anchorage Correctional Complex. He is the person directing and maintaining physical and control of Petitioner pursuant to the Department of Correction's contract with U.S. Immigration and Customs Enforcement to detain noncitizens. Respondent Hernandez is the physical and legal custodian of Petitioner and has authority to release him. He is sued in his official capacity.

12. Respondent UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT is a subordinate agency of the Department of Homeland Security. Immigration and Customs Enforcement (ICE) has requested that the foregoing Respondents detain Petitioner and is a legal custodian of Petitioner with authority to release him.

13. Respondent THOMAS HOMAN is the White House Border Czar appointed by President Donald J. Trump. Petitioner is detained pursuant to Respondent Homan's unlawful orders. Respondent Homan is sued in his official capacity.

14. Respondent CALEB VITELLO is the Acting Director of U.S. Immigration and Customs Enforcement. He is a legal custodian of Petitioner with authority to release him. He is sued in his official capacity.

## V. STATEMENT OF FACTS

15. Petitioner is a 27-year-old citizen of Somalia.

16. On December 8, 2022, Petitioner sought asylum at the southern border of the United States and was detained by Department of Homeland Security agents. He was deemed to have a credible fear of persecution and allowed to file an asylum claim with the Immigration Court in a detention center in the Lower 48 states. Petitioner did not have benefit of counsel during that proceeding, and accordingly, his asylum claim was denied. The Immigration Judge failed to consider whether Petitioner was eligible for protection under the Convention Against Torture, and ordered him deported on or around April 28, 2023.

17. After spending months in ICE custody, Petitioner was released on or around December 20, 2023 on an order of supervision due to the fact that his removal to Somalia was not reasonably foreseeable. Petitioner spent more than one year in ICE custody.

18. After his release, Petitioner complied with the conditions of his release by regularly reporting to ICE as directed.

19. On July 19, 2024, the Secretary of Homeland Security announced the extension and redesignation of Somalia for Temporary Protected Status (TPS) for eighteen (18) months. Extension and Redesignation of Somalia for Temporary Protected Status, 89 Fed. Reg. 59135 (July 22, 2024). This extension and redesignation has been and is in effect from Sep. 18, 2024, through Mar. 17, 2026.

20. Petitioner applied for TPS and his application is currently pending. He was ordered to report to U.S. Citizenship and Immigration Services on February 7, 2025 at 2:00 p.m. at the Federal Building in Anchorage, Alaska. However, ICE agents have refused to transport him to this appointment due to a "lack of personnel" to effectuate his transport from the Anchorage Correctional Complex to the Federal building.

21. Petitioner has not been charged with or convicted of any crimes in the United States.

22. There is not a significant likelihood that ICE will remove Petitioner to Somalia in the reasonably foreseeable future. Such efforts proved unsuccessful in the time Petitioner was under ICE custody following his April 28, 2023 order of removal, and circumstances have not changed such that removal is now more likely. Furthermore, removal to a third country is not reasonably foreseeable, as Petitioner has no ties to any third country.

23. Petitioner has fully cooperated with efforts by ICE regarding his detention and removal.

## VI. LEGAL FRAMEWORK

24. Petitioner's release is required by controlling Supreme Court precedent and 8 C.F.R. § 241.13.

25. In Zadvydas v. Davis, 533 U.S. 678 (2001), the U.S. Supreme Court held that six months is the presumptively reasonable period during which ICE may detain non-citizens in order to effectuate their removal. Id. at 702. The Zadvydas standard applies to all noncitizens, including those who are inadmissible. Clark v. Martinez, 543 U.S. 371 (2005).

26. Zadvydas involved a noncitizen who had a final order of removal. Although the government had not yet been able to remove him, it asserted authority to continue to detain him under the post-removal-period detention statute, which authorizes detention beyond the normal 90-day removal period if the non-citizen is deemed a "risk to the community or unlikely to comply with the order of removal." Zadvydas, 533 U.S. at 688; 8 U.S.C. § 1231(a)(6). The Court rejected the government's position. First, it noted that a statute permitting such potentially indefinite detention, which is civil and therefore non-punitive in nature, would violate the Due Process Clause of the Fifth Amendment unless some "special justification" outweighs the individual's constitutionally protected interest in avoiding physical restraint, and the statute employed rigorous procedural protections to determine that detention was justified. Zadvydas, 533 U.S. at 690.

27. The Zadvydas Court held that the two justifications for the detention at issue, preventing flight and protecting the community, were inadequate to justify prolonged and indefinite detention. Id. Regarding risk of flight, the Court stated, "The first justification – preventing flight – is weak or nonexistent where removal seems a remote possibility at best." Id. Regarding protecting the community, the Court held that this rationale should be reserved for "specially dangerous individuals," and that clear and convincing evidence of requisite dangerousness, accompanied by strong procedural

Salad v. USCIS *et. al.*
Petition for Habeas Corpus - Page 7 of 14

Case 3:25-cv-00029-TMB-KFR   Document 1   Filed 02/07/25   Page 7 of 14

safeguards, as well as some other "special circumstance, such as mental illness, that helps to create the danger" would be required to justify prolonged and indefinite detention on that basis. Id. at 691. The Court found that the administrative procedures available to Mr. Zadvydas were inadequate and that Mr. Zadvydas was not in the class of especially dangerous individuals that would justify indefinite detention. Id. at 684, 691-92 (suggesting that suspected terrorists and individuals with sexually violent pasts who also had a mental condition that made future violence likely could conceivably meet this standard).

28.     To avoid finding the statute unconstitutional, the Zadvydas Court construed § 1231(a)(6) to contain an implicit "reasonable time" limitation subject to federal judicial review, rather than to authorize indefinite detention. Id. at 682. In so doing, the Court established a presumptively reasonable period of six months after the date of the final order of removal during which the government may detain a non-citizen to effectuate removal, and it held that a reviewing habeas court must determine whether any detention beyond that period exceeds what is reasonably necessary to secure removal in any given case. Id. at 699, 701. After this period, "once the non-citizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. In addition, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

29.     The regulations that implement § 1231(a)(6) are codified in part at 8 C.F.R. § 241.13. Pursuant to the regulations, if there is not a "significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future," then the Service

"shall promptly make arrangements for the release" of the noncitizen unless there are "special circumstances" that justify continued detention. 8 CFR § 241.13(g)(1).

30. A noncitizen's release may be revoked and the noncitizen may be returned to DHS custody, but only if the noncitizen violates the terms of their release or if, due to a change in circumstances, DHS "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 CFR 241.13(i)(2). However, the Service is required to notify the noncitizen of the reasons for the revocation of their release. 8 CFR § 241.13(i)(3) (proscribing revocation procedures).

31. Here, Petitioner is entitled to release under Zadvydas and 8 C.F.R. § 241.13. First, DHS already determined that there was not a significant likelihood of removing Petitioner in the reasonably foreseeable future when they released him from detention under an Order of Supervision. In extending and redesignating Somalia for TPS, on July 19, 2024, the Secretary of Homeland Security recognized that Somalia is experiencing an ongoing armed conflict involving state and non-state actors as well as other "extraordinary" conditions that justify the granting of TPS. Therefore there has not been a change in circumstances that would impact DHS's determination whether there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

32. Second, in detaining Petitioner the Respondents have not complied with the requirements under 8 CFR § 241.13(i). When Petitioner was detained, he was not informed why his release was revoked. Further, there has not been a change in circumstances in Somalia that would justify a determination by DHS that there is now a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

33. Here, the only circumstance that has changed is the presidential administration. Upon entering office, President Donald J. Trump issued a slew of executive orders and changes in U.S. immigration policy to deport as many noncitizens as possible. But Respondents must still comply with the law, and in Petitioner's case, they have not done so.

## VII. CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process

34. The allegations in the above paragraphs are realleged and incorporated herein.

35. Under the Due Process Clause of the Fifth Amendment, even a noncitizen who can be held for a prolonged period of time due to the existence of a "special justification" for such detention is entitled to strong procedural safeguards to protect against unconstitutional indefinite civil detention. Zadvydas 533 U.S. at 691.

36. Petitioner in this case has been denied adequate procedural safeguards. He has received no hearing concerning whether his detention is justified, and the only officials who have considered whether or not he should be released are ICE agents who are responsible for his custody, and therefore necessarily do not make decisions concerning a noncitizens' custody status in a neutral or impartial manner. While there is an administrative mechanism in place for Petitioner to demand a review of the revocation of his release, Petitioner has not been permitted to pursue such review. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates Petitioner's right to procedural due process.

37. Further, when Petitioner was detained, he was not informed why his release was revoked and there has not been a change in circumstances in Somalia that

would justify a determination by DHS that there is now a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

38.  For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

## COUNT TWO
## Violation of 8 U.S.C. § 1231(a)(6) and Implementing Regulation 8 CFR § 241.13

39.  The allegations in the above paragraphs are realleged and incorporated herein.

40.  Petitioner's continued detention by Respondents is unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in Zadvydas and 8 CFR § 241.13. Petitioner's removal to Somalia or to any other country is not significantly likely to occur in the reasonably foreseeable future.

41.  For these reasons, Petitioner's detention violates 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.13;

## COUNT THREE
## Violation of Fifth Amendment Right to Substantive Due Process

42.  The allegations in the above paragraphs are realleged and incorporated herein.

43.  Petitioner's continued detention violates Petitioner's right to substantive due process. Because Respondents have indicated absolutely no interest in effectuating Petitioner's removal, the justification of preventing flight is nonexistent, even assuming it could constitute a "special justification" sufficient to permit prolonged detention. Nor can Petitioner's detention be justified on public safety grounds. Petitioner has not been convicted of any crimes in the United States. Neither does Petitioner have a history of

mental illness. Therefore, Petitioner does not qualify as one of the "specially dangerous" individuals described by the Court in Zadvydas that would justify indefinite detention. Thus, even if Petitioner's detention were authorized by statute or regulation, the government could not meet the constitutional standard set forth in Zadvydas, as they have not provided clear and convincing evidence of dangerousness, along with the requisite special circumstance, such as mental illness, sufficient to justify prolonged detention based on dangerousness.

## COUNT FOUR
## CONVENTION AGAINST TORTURE CLAIM

44. The allegations in the above paragraphs are realleged and incorporated herein.

45. Petitioner has been denied an opportunity to apply for protection under the Convention Against Torture.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner requests this Court to:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.13;

(4) Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody on reasonable conditions of supervision;

(5) Enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention of Petitioner;

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7) Grant any further relief this Court deems just and proper.

Respectfully submitted this 7th day of Feb, 2025.

/s/ Margaret D. Stock
Margaret D., Stock, Esq.
Alaska State Bar No.: 9306036

/s/ Neil T. O'Donnell
Neil T. O'Donnell, Esq.
Alaska State Bar No. 8306049

/s/ Kristine A. Quint
Kristine A. Quint, Esq.
Alaska State Bar No. 2411132P

Cascadia Cross Border Law Group LLC
4300 B Street, Suite 207
Anchorage, AK 99503
Email: mstock@cascadialawalaska.com
Email: nodonnell@cascadialawalaska.com
Email: kquint@cascadialawalaska.com
Telephone: (907) 242-5800
Facsimile: (360) 676-5459
Attorneys for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Roble Ahmed Salad, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 7th day of February, 2025.

/s/ *Margaret D. Stock*
Margaret D., Stock, Esq.
Alaska State Bar No.: 9306036