Margaret D. Stock, Esq.
Alaska State Bar No. 9306036
Neil T. O'Donnell, Esq.
Alaska State Bar No. 8306049
Kristine A. Quint, Esq.
Alaska State Bar No. 2411132
Cascadia Cross Border Law Group LLC
4300 B St., Suite 207
Anchorage, AK 99503
Email: mstock@cascadialawalaska.com
Email: nodonnell@cascadialawalaska.com
Email: kquint@cascadialawalaska.com
Telephone: (907) 242-5800
Facsimile: (907) 290-8827

Attorneys for the Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBLE AHMED SALAD,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>STATE OF ALASKA, Department of Corrections; ARLANDO HERNANDEZ, Superintendent of the Anchorage Correctional Complex, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; THOMAS HOMAN, White House Border Czar, in his official capacity; and CALEB VITELLO, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity.<br><br>　　　　　　Respondents. | Case No. 3:25-cv-00029-SLG<br><br>**PETITIONER'S PREHEARING MEMORANDUM** |

## I – INTRODUCTION

On December 8, 2022, Petitioner sought asylum at the southern border of the United States and was detained by Department of Homeland Security agents. He was deemed to have a credible fear of persecution and allowed to file an asylum claim with the Immigration Court in a detention center in the Lower 48 states. Petitioner did not have benefit of counsel during that proceeding, and accordingly, his asylum claim was denied. Still lacking counsel, Petitioner filed an appeal to the Board of Immigration Appeals, which was also denied. Respondents state the removal order became final after that denial on May 30, 2023. Dkt. 13 p. 2.[1]

ICE was unable to deport Mr. Salad because of the chaotic, violent, and dysfunctional conditions in Somalia. Petitioner was eventually released on November 28, 2023 under an Order of Supervision (OSUP) because it was not likely that he would be deported to Somalia in the reasonably foreseeable future, and his continued detention would have been unconstitutional as violative of the Due Process Clause. Ex. 1.

Also important to this matter is an understanding of Temporary Protected Status (TPS). On July 22, 2014, the Attorney General redesignated Temporary Protected Status for Somali nationals residing in the United States. Dkt. 14-8. TPS is a temporary immigration status provided to nationals of specifically designated countries that are confronting an ongoing armed conflict, environmental disaster, or extraordinary and temporary conditions. Dkt. 14-5. TPS provides a work permit and <u>protection from deportation</u> to foreign nationals from those countries

---

[1] The likelihood that an individual with limited command of English held at a remote detention facility without access to counsel will be able to submit a successful asylum claim is exceeding remote. Stock Dec. Dkt. 14-1 p. 9.

who are in the United States at the time the U.S. government makes the designation. *Id*. This TPS continues for Somalia until March 17, 2026. Dkt. 14-8.[2]

### 1. Due Process Prohibits Unreasonable Indeterminate Detention Without Good Cause.

The court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), construed a statute authorizing detention of aliens admitted to the United States but subsequently ordered removed, 8 U.S.C. § 1231, to include a "reasonable time" limitation to avoid constitutional infirmity. The court noted that the Due Process Clause applies to all "persons" within the United States whether their presence is lawful, unlawful, temporary, or permanent, including "an alien subject to a final order of deportation." 533 U.S. at 693 - 94. The court stated that "to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id*. at 699. In so finding, the court stated it was carrying out "what this Court has described as the 'historic purpose of the writ [of habeas corpus] namely to relieve detention by executive authorities without judicial trial. *Brown v. Allen*, 344 U.S. 443, 533 (1953).'" *Zadvydas* at 699.

The court in *Zadvydas* also provided guidance on determining the length of reasonable detention. The detention statute, 8 U.S.C. § 1231, provided (then and now) that the alien subject

---

[2] The July 24, 2024, Federal Register Notice of Extension and Redesignation of Somalia for Temporary Protected Status (TPS) states in overview that:

> Somalia continues to experience widespread insecurity due to armed conflict involving state and non-state actors. The ongoing conflict, as well as other violence, has exposed civilian populations to ill-treatment, abuse, and displacement. Additionally, Somalia recently experienced intense flooding that damaged land and infrastructure, impeded efforts to address food insecurity, and exacerbated disease outbreaks. Significant barriers to the delivery of humanitarian aid persist. (Dkt. 14-8 p. 3)

to a final order of deportation shall be removed within 90 days. The court stated that it doubted that Congress believed all reasonably foreseeable removals could be completed in 90 days when it lowered the detention period in the statute from six months to 90 days in 1996, but the court stated it did have reason to believe that Congress "doubted the constitutionality of detention for more than six months." *Id*. at 701. The court, "for the sake of uniform administration," adopted a presumption that after six months of detention the alien should typically be released **where there is no significant likelihood of removal in the reasonably foreseeable future**. *Id*. (emphasis added.)

The foregoing holding is reflected in the detention statute, 8 U.S.C. § 1231, and the related regulation, 8 CFR § 241. Section 8 U.S.C. § 1231(a)(1) provides that when an alien is ordered removed the government "shall remove the alien from the United States within a period of 90 days." Section 8 U.S.C. § 1231(a)(3) provides that if the alien is not removed within the 90-day removal period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Regulation 8 CFR § 241.4 *et. seq*. provides for procedures and requirements for continuing detention beyond the 90-day detention period. Those regulations contemplate the conclusion of the review and determination process within six months of the commencement of the removal period, as required by *Zadvydas*. *See, e.g*., 8 CFR § 241.13(b)(2)(ii). Notably, release exceptions exist, for example, for aliens who "pose a special danger to the public, because the alien has previously committed one or more crimes of violence as defined in 18 U.S.C. 16." 8 CFR § 241.14(f)(1)(i). Here Petitioner has not committed any crime, violent or otherwise.

Respondents state that Petitioner's removal order became administratively final on May 30, 2023. Dkt. 13 p. 2. The 90-day removal period thus ended on August 28, 2023 with Mr.

Salad still in ICE custody. The six-month period ended on November 30, 2023. However, ICE had released Mr. Salad under an Order of Supervision two days earlier on November 28, 2023. Ex. 1.

**2. There Remains No Significant Likelihood of Removal in the Reasonably Foreseeable Future.**

Respondents detained Mr. Salad on February 5 on a warrant issued that same day. Ex. 5. Respondents allege (but have not show to Petitioner) that they now—for the first time in years—have a "temporary" travel document which constitutes "changed circumstances" that supports deportation of Mr. Salad to Somalia. Ex. 6;[3] Hayes Declaration Dkt. 13 p 4.[4] This alleged "temporary" travel document cannot, **as a matter of law**, create a significant likelihood or

---

[3] This document is dated the day after Respondent filed his habeas petition. It should have been served on Mr. Salad's counsel. 8 CFR § 292.5. Counsel found a copy in Mr. Salad's personal file of records which were in the possession of ICE and finally released to counsel mid-day today. The required due process interview discussed in the notice has not occurred. *See* Dkt. 14 p. 8.

[4] Petitioner objected to Respondents' refusal to provide Petitioner with a copy of this document at the February 14 hearing. Respondent offered to provide a copy *in camera* for the court review. Respondents argued that also providing a copy to Petitioner would disclose the date the document expired and that Petitioner, after learning of that date, would do some unspecified bad thing with that information. Unless Respondents stipulate that Petitioner is not deportable, the document should be produced to Petitioner simply based on Respondents' argument. Whether someone can be removed in the reasonably foreseeable future is a timing issue. The time the temporary travel document expires obviously bears on that question, particularly in light of the present statutory bar to deportation due to the pending TPS application. Furthermore, immigration law is a highly complex field and the Court does not have the background unassisted to identify other potential issues that may be evident from a specialist's view of the document. There is also substantial grounds to believe that Respondents, specifically here, and also in general, are intentionally not adhering to applicable laws. *See* Ex. 10 (ICE is now deporting individuals including from Iran, China, and Afghanistan by military flights to Panama—a country to which these individuals have no connection—preventing them from pursuing asylum claims.).

removal in the reasonably foreseeable future because ICE is presently prohibited from deporting Ms. Salad by statute. 8 U.S.C. § 1254a(a)(4)(B) states:

> In the case of an alien who establishes a prima facie case of eligibility for benefits under paragraph (1), until a final determination with respect to the alien's eligibility for such benefits under paragraph (1) has been made, the alien shall be provided such benefits.

One such benefit is that the government "shall not remove the alien." 8 U.S.C. § 1254a(1). Respondents have not suggested any grounds on which Mr. Salad might be denied TPS. He has indisputably filed a prima facie TPS application. And Respondents admit that Mr. Salad is presently not deportable. "Petitioner cannot be removed until USCIS adjudicates his TPS application." Dkt. 13 p. 4, *see also* Dkt. 12 p. 9.[5]

### 3. Mr. Salad is Not a "Immigration Fugitive."

As an apparent alternative theory to support Mr. Salad's continued detention, Respondents argue that Mr. Salad is an "immigration fugitive." Hayes Declaration Dkt. 13 p. 3. This argument is without merit.

Mr. Salad was required by his Order of Supervision (OSUP) to appear and check in with the San Antonio, Texas ERO (Enforcement and Removal Office) on December 18, 2024. Anchorage Supervisory Detention and Deportation Officer (SDDO) Bradley Hayes advised the Court under oath that Petitioner's habeas petition should be denied because "Petitioner failed to report in to ERO [in San Antonio] on December 18, 2024 in violation of his OSUP and became an immigration fugitive." Hayes Declaration Dkt. 13 p. 3; Return Dkt. 12 p. 13. Hayes was

---

[5] Even a near term denial of Mr. Salad's TPS application would not make Mr. Salad deportable in the reasonably foreseeable future. A TPS denial of Mr. Salad's application would be patently wrong, but it would be appealable, and the appeal process would take substantial additional time. 8 C.F.R. § 244.10.

Petitioners Prehearing Memorandum
*Salad v. State of Alaska et. al*. Case No.3:25-cv-00029 - Page 6

incorrect. In fact, Mr. Salad used his meager savings to purchase airline tickets and fly from Anchorage to Texas to report to the San Antonio ERO on the appointed date. *See* Ex. 2.

The day after Petitioner filed his Reply pointing out that Mr. Salad did in fact report as required for his check-in in Texas (Dkt. 14 p. 3), Respondents filed another declaration, this time from San Antonio Detention Officer Harry Burns. Dkt. 16. Burns admitted that Mr. Salad had reported to Texas for his check in. Now ICE has claimed that Mr. Salad was an "immigration fugitive" because he had written in his old Texas address (821 Gunter Street, Austin, Texas), along with an Alaska phone number, on the information intake form when he reported to the San Antonio ERO. *Id*. p. 2.[6] Mr. Salad will testify he wrote this address because he did not yet have a permanent address in Anchorage. He had just moved temporarily into a friend's apartment the prior month. He was hoping to rent an apartment soon and intended to report that new address, when he received it, to ICE.

The contention that Mr. Salad was an "immigration fugitive" remains meritless. First, fugitives do not spend their savings flying 4,000 miles to report in as directed on their OSUP. Second, Mr. Salad reported his Anchorage address—where he was temporarily staying—three weeks later on his January 15, 2025 TPS application. Exs. 3 and 4; Stock Dec. Dkt. 14-1 p. 1; Burns Dec. Dkt. 16 p. 3. The TPS database is available to ICE. *Id*. Indeed, ICE used the TPS database to locate Mr. Salad when they decided to detain him despite the statutory bar to his present deportation in 8 U.S.C. § 1254a(a)(4)(B). They found him, not surprisingly, leaving his reported residence.

---

[6] That address is for the Casa Marianella homeless shelter.

Petitioners Prehearing Memorandum
*Salad v. State of Alaska et. al*. Case No.3:25-cv-00029 - Page 7

### 4. Besides Being Unlawful, Mr. Salad's Detention is a Waste of Time, Effort and Money.

So far ICE has purchased three airline tickets to fly two ICE officers plus Mr. Salad from Anchorage to Texas. Then ICE had to purchase three airline tickets to fly two ICE officers plus Mr. Salad back from Texas to Anchorage. And ICE is continuing to incur detention expenses. Yet Mr. Salad is clearly not an "immigration fugitive." Mr. Salad's continued detention is thus unlawful, purposeless, and expensive.

### 5. Petitioner Should be Released from Custody Because ICE has already Attempted to Deport Him Illegally, and Could Attempt Again if He Remains in Custody.

The Petition for Habeas Corpus was filed late on Friday, February 7. ICE flew Mr. Salad out of Alaska early Sunday morning—without notice to his counsel—trying to beat the entry of the Order to Show Cause that ICE knew was coming Monday morning. Stock Dec. Dkt. 14-1 p. 5.[7] Mr. Salad's transportation south was not due to the fact that ICE typically uses the Anchorage jail as short-term holding facility. Notably, ICE did not transport Mr. Salad to Anchorage ICE's usual long term detention facility in Tacoma, Washington. Rather, ICE transported Mr. Salad to the ICE detention facility in Pearsall, Texas (the South Texas ICE

---

[7] This scheme was illegal because the Court's jurisdiction over Mr. Salad vested at the time of filing of the habeas petition and could not be defeated by ICE's involuntary removal of Mr. Salad from the state. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("Thus, *Endo [Ex parte Endo*, 323 U.S. 283 (1944)] stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may deliver the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Smith v. Campbell*, 450 F.2d 829, 834 (9th Cir. 1971) ("The subsequent involuntary removal of the petitioner from the district does not defeat that jurisdiction when those having present custody of the petitioner are subject to the process of the court."); *Acosta v. Doerer,* 2024 WL 4800878 at *4 (C.D. Calif., Oct. 24, 2024) ("The Court—and the Ninth Circuit—agrees with Petitioner and *Endo* controls here. 'Because jurisdiction attaches on the initial filing for habeas corpus relief, . . . it is not destroyed by a transfer of the petitioner and the accompanying custodial change.' *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)."

Processing Center), which is apparently being used to stage Somalis for deportation flights. Thus it appears that, but for this habeas petition, ICE would have deported Mr. Salad despite the fact that ICE <u>knew that Mr. Salad was not legally not deportable</u> because of his pending TPS application.[8]

In 35 years of practicing immigration law, Petitioner's counsel Margaret Stock has never seen ICE detain a person in this circumstance. The expensive mess that ICE has created is evident from the history of the events in this case. The actions in this case seem driven by the new administration decision to massively expand deportations regardless of whether they can be done lawfully. Respondent Tom Homan, the "Border Czar," recently commented that he was not satisfied with the pace and volume of immigration arrests and he would investigate why some detainees taken into custody were let go. Dkt. 14-7. ICE officials have now reportedly placed limits on release without prior approval of the agency's acting Director (and Respondent) Caleb Vitello. Ex. 9 p. 3. Petitioner, however, has now completed his biometrics and his TPS application is complete. Respondents have no basis for detaining him.

### III – CONCLUSION

Because ICE is presently prohibited from deporting Ms. Salad by statute, 8 U.S.C. § 1254a(a)(4)(B), there is no significant likelihood of removal in the reasonably foreseeable future. Mr. Salad's petition should be granted on this basis as a matter of law. *Zadvydas v. Davis*, 533 U.S. 678 (2001).

---

[8] On account of the filing of this Petition and the upcoming hearing tomorrow, Respondents finally made arrangements for Mr. Salad's biometrics to be taken and submitted today. Petitioner now understands that his TPS application is complete.

Petitioners Prehearing Memorandum
*Salad v. State of Alaska et. al*. Case No.3:25-cv-00029 - Page 9

As the evidence and testimony will show in the hearing set for February 19, 2025, Mr. Salad is not an "immigrant fugitive" and cannot be detained for this reason.

Respectfully submitted this 18th day of February, 2025.

/s/ *Margaret D. Stock*
Margaret D. Stock, Esq.
Alaska State Bar No.: 9306036

/s/ *Neil T. O'Donnell*
Neil T. O'Donnell, Esq.
Alaska State Bar No. 8306049

/s/ *Kristine A. Quint*
Kristine A. Quint, Esq.
Alaska State Bar No. 2411132P
Cascadia Cross Border Law Group LLC
4300 B Street, Suite 207
Anchorage, AK 99503
Email: mstock@cascadialawalaska.com
Email: nodonnell@cascadialawalaska.com
Email: kquint@cascadialawalaska.com
Telephone: (907) 242-5800
Facsimile: (360) 676-5459
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, a true and correct copy of the foregoing was served electronically on the following:

Joshua A. Trini
Josh.Traini@ujsdoj.gov
Noah Roetman
Noah.Roetman@usdoj.gov
Attorneys for Federal Respondents

Andalyn Pace
Andalyn.pace@alaska.gov
Attorney for the State of Alaska

/s/ *Neil T. O'Donnell*
Cascadia Cross Border Law, LLC

Petitioners Prehearing Memorandum
*Salad v. State of Alaska et. al*. Case No.3:25-cv-00029 - Page 10

Case 3:25-cv-00029-TMB-KFR     Document 19     Filed 02/18/25     Page 10 of 10